## JOHN C. HOWARD *vs.* JAMES A. ODELL & another.

One who has taken a bill of sale of a vessel, absolute in terms, but intended only as collateral security for a debt, and has never taken her into his possession or control, or held himself out to the world as an owner, is not liable for supplies or repairs, although the vessel is registered in his name.

The fact that such a bill of sale was intended only as collateral security may be shown by parol, for the purpose of negativing any authority to procure supplies or repairs on the credit of its holder.

CONTRACT for supplies and cordage. The defendant Odell was defaulted, and the defence was carried on by the other defendant, Kidder. The following facts were agreed.

The plaintiff furnished the articles named in his bill of particulars to Odell, who bought them for the use of the schooner Isabella. Odell purchased them for the schooner, and when the first purchase was made the plaintiff inquired who the owners were, and was informed that both defendants were the owners. He afterwards sent to the custom-house, and found there that the vessel was registered in the name of Odell & Kidder.

He then delivered goods, as charged in his account. The charge was made to the " schooner Isabella " in the plaintiff's books. The plaintiff can show that he sold these goods, because he found these parties to be the registered owners. At this time, and for some time previous, the schooner had been registered as the joint property of Odell & Kidder.

Kidder's interest in the schooner was derived in this way: — One John O. Wilson, the owner of half of her, being indebted to Kidder, gave him a bill of sale of his share absolute in form, which was duly recorded. Nothing appears of record to show that this conveyance was other than absolute, and no writing passed between the parties to show that it was not absolute; but the defendant can show that it was agreed by parol that he should hold it as collateral security, and he made a memorandum to that effect on the note for which it was held as collateral, at the time the schooner was at sea.

Kidder never exercised any acts of ownership further than to

go and see her when she arrived on her return ; and, hearing the condition of the vessel and voyage, refused to have anything to do with her, and forbade Odell to do anything in his behalf, and stated that he would incur no liability on her account; and subsequently he offered to sell all his interest in the debt, and security to the other defendant, which was never consummated.

Wilson died before the arrival of the vessel, and his estate was declared insolvent ; Kidder never proved or offered to prove his claim against the estate, and never took any measures to enforce it. Kidder has no interest whatever in the voyage for which supplies were furnished, and always refused to have anything to do with the vessel, but not to the plaintiff, who knew nothing except what he saw on the registry. The defendant Kidder had no knowledge of the contracting of this bill, and never heard of it till he was sued.

If any of the above facts are incompetent, or the mode of proof of any is incompetent, they are to be rejected by the court ; and, upon such facts as are competent, the court is to enter such judgment for the plaintiff or defendant as law may require.

*S. B. Ives, Jr.* for the plaintiff, cited *Tucker* v. *Buffington,* 15 Mass. 477 ; *Lord* v. *Ferguson,* 9 N. H. 384 ; *Starr* v. *Knox,* 2 Conn. 215 ; *Brooks* v. *Bondsey,* 17 Pick. 441 ; *James* v. *Bixby,* 11 Mass. 34; *Dix* v. *Otis,* 5 Pick. 38 ; *Adams* v. *Wilson,* 12 Met. 138; *Whitaker* v. *Sumner,* 20 Pick. 399.

*A. A. Abbott,* for the defendant Kidder.

BIGELOW, C. J. Whatever doubts may formerly have been entertained as to the liability of a mortgagee of a vessel, not having her in his possession or control, for supplies and repairs furnished on the order or at the request of the master or mortgagor, it is now well settled, both in this country and in England, that no such liability exists. Nor does the fact, that the register or enrolment of the vessel stands in the name of the mortgagee, and that his apparent title on the record is by a conveyance absolute in form, of itself operate to render him liable for debts contracted for supplies and repairs. The real question in all such cases is, with whom was the contract m? `ᴀ

and was the person who made it authorized to bind the mort-gagee ?   If the mortgagee was not in possession of the vessel, and did not receive the benefit of her earnings, or exercise any control over her, but only held his title as collateral security for his debt, then it is very clear that neither the master nor the mortgagor could claim to act as his agent, or bind him by their contracts.   In such case there is no authority, either express o implied, by which they can undertake to act in his behalf. Doubtless the mortgagee may, by his acts, hold himself out as the real owner of the vessel in such way as to lead persons to believe that the master or mortgagor is his agent, authorized to . make contracts concerning the vessel.   He would then be bound by them, under the ordinary rule of law regulating the relation of principal and agent.   Such was the case in *Tucker* v. *Buffington,* 15 Mass. 477, where the mortgagees not only had the enrolment of the vessel taken out in their names as owners, but also substituted Boston, their own place of residence, on the stern of the vessel, instead of Portland, where the mortgagors resided.   The court, in stating their reasons for holding the mort-gagees liable in that case, give great weight to this circumstance. But this court has since decided, in *Brooks* v. *Bondsey,* 17 Pick. 441, that a mortgagee of a vessel is not liable for supplies, if the vessel is not in his possession or employment, although she was enrolled in his name as absolute owner.   Indeed it would be giving altogether too much weight to the registry and enrol-ment of vessels to hold, that persons whose names appeared therein as owners were thereby made liable for repairs and supplies.   Every one conversant with shipping and commercial dealings knows that vessels are often employed under charter-parties, by which even the real owners are exempted from all charges incurred in their management and navigation.   When-ever the charterer is by the terms of his contract deemed to be owner *pro hac vice,* no liability for supplies or repairs attaches to the actual owner of the vessel in whom the legal title is vested.   It is therefore well understood among all persons en-gaged in the business of making repairs or furnishing supplies that their right to recover payment therefor does not depend on

the registry or enrolment, but on the right and authority of the person w-th whom they deal to act as agent for the owners, and to bind them by his contracts. The real transaction between the parties is to be looked at, in order to ascertain whether that which appears by the registry to be a legal title in a particular person is or is not such an ownership as will authorize the person making the contract to act as agent. An equitable title in one person, having the control and possession of the vessel, may well consist with a documentary title at the custom-house in another person. Nor does it make any difference that a part of the vessel only is registered or enrolled in the name of a person. This gives the other part owner or the master no authority to pledge his credit for repairs or supplies, if he is in fact only mortgagee of part of the vessel. It is still a question of agency, to be settled by an inquiry into the real nature of the title. *Winslow* v. *Tarbox*, 18 Maine, 132. *Cutler* v. *Thurlo*, 20 Maine, 213. *Myers* v. *Willis*, 17 C. B. 77. S. C. 18 C. B. 886. *Brodie* v. *Howard*, 17 C. B. 109. *Hackwood* v. *Lyall*, 17 C. B. 124. *Mitcheson* v. *Oliver*, 5 El. & Bl. 419.

In the present case, there is no proof of any authority in the master or other part owner to bind the defendant by any contract for supplies or repairs. He never took possession of the vessel, or exercised any control over her, or received any benefit from her earnings. He held the vessel only as security for his debt, and distinctly repudiated all right to manage or control her, and prohibited the other part owner from incurring any liability on his account. Under such circumstances, the plaintiff had no right to rely on the credit of the defendant. He could not, by merely looking at the register, assume that the defendant was liable, and on that ground charge him with the supplies. This would be to allow the plaintiff, at his election, to give credit to the defendant and make him his debtor, without any regard to the intentions of the defendant, or any consideration of the legal effect of his relation to the other part owner and to the master of the vessel, by reason of his holding part of the vessel as security for his debt. It is a fallacious and incorrect mode of stating the question to ask on whose credit the goods were supplied. The true

question is, Who was the contracting party? And, to obtain a correct answer to this inquiry, it is necessary to ascertain whether the goods were bought by an authorized agent of the defendant. *Mitcheson* v. *Oliver*, *ubi supra.*

It was urged by the counsel for the plaintiff that parol evidence was inadmissible to show that the bill of sale absolute in form was in fact intended as a mortgage, and was held by the defendant only as collateral security for a debt. But this objection proceeds on a misapprehension of the purpose for which the evidence was offered. It was not intended to alter or vary the legal effect of the instrument, as between the parties to it or those claiming derivatively under it; but only to show the real nature of the transaction between the parties, as bearing on the question of the authority of the other part owner to act as agent of the defendant in purchasing supplies for the vessel. In this view it was clearly competent.

*Judgment for the defendant Kidder.*